**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **YSIDORO ISAAC GUERRERO,** | ) | |
| **ID # 56309-177,** | ) | |
| **Movant,** | ) | |
| | ) | **No. 3:19-CV-2092-B-BH** |
| **vs.** | ) | **No. 3:17-CR-341-B(12)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the second *Amended Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on November 18, 2019 (doc. 9), should be **DENIED** with prejudice.

## I.    BACKGROUND

Ysidoro Isaac Guerrero (Movant) challenges his federal conviction and sentence in Cause No. 3:17-CR-341-B(12).  The respondent is the United States of America (Government).

### A.    Conviction and Sentencing

In a three-count superseding indictment, Movant was charged with one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 (Count One), and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Two) on September 26, 2017.  (*See* doc. 84.)[2]  He pled guilty to Count Two of the superseding indictment on May 22, 2018, under a plea agreement.  (*See* docs. 193, 285.)

In his plea agreement, Movant stated that he understood and waived his rights to plead not

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, No. 3:17-CR-341-B(12).

guilty, to have a trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, and to not be compelled to incriminate himself. (*See* doc. 193 at 1.)[3] He agreed that he understood the nature and elements of the crime to which he was pleading guilty, and that the factual resume he signed was true and would be submitted as evidence. (*See id.*) The plea agreement set out the range of punishment for Count Two and stated that Movant had reviewed the federal sentencing guidelines with counsel, that he understood his sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding, and that no one could predict with certainty the outcome of the Court's consideration of the guidelines. (*See id.* at 2-3.) He understood that the Court had sole discretion to impose the sentence. (*See id.* at 3.) He had reviewed all legal and factual aspects of the case with counsel and believed that it was in his best interest to enter into the plea agreement and plead guilty. (*See id.* at 5-6.) The guilty plea was freely and voluntarily made and was not the result of force or threats, or of promises apart from those included in the plea agreement. (*See id.* at 5.) He waived his right to appeal his conviction and sentence and his right to contest his conviction and sentence in a collateral proceeding, except that he reserved the right (a) to bring a direct appeal of a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing, (b) to challenge the voluntariness of his guilty plea or the appeal waiver, and (c) to bring a claim of ineffective assistance of counsel. (*See id.*) In exchange, the Government agreed not to bring any additional charges against him based on the conduct underlying and related to his guilty plea, and to dismiss any remaining charges against him in the pending indictment after sentencing. (*See id.* at 4.)

At his re-arraignment on May 22, 2018, Movant, through an interpreter, acknowledged

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

under oath that he had carefully reviewed the factual resume with counsel and had it translated, that the stipulated facts were true and correct, and that he understood and had committed each of the essential elements of the charged offense. (*See* doc. 814 at 3, 12-14**,** 20.) He also acknowledged that he understood the rights he was giving up by pleading guilty, and that he was waiving his right to appeal from or challenge his conviction except in the limited circumstances set forth in the plea agreement. (*See id.* at 7-9, 16-17.) He was advised that the sentencing guidelines were advisory and the Court was not required to follow them, and he affirmed that he had discussed with his attorney how the sentencing guidelines might apply to his case; he understood that he should not depend or rely on any statement or promise, including from his counsel, as to the exact sentence he would receive because only the Court could make that decision. (*See id.* at 9-10.) He also understood that the Court alone would determine his sentence after consideration of the sentencing guidelines, a Presentence Investigation Report (PSR) that could include or exclude facts not contained in his factual resume, any objections to the PSR, and any evidence presented at the sentencing hearing. (*See id.* at 10-11.)

He acknowledged that by pleading guilty to Count Two, he was subjecting himself to a maximum term of 20 years' imprisonment, a fine up to $500,000 or twice any pecuniary gain to Movant or loss to the victims, a term of supervised release of not more than three years, a special assessment, restitution, costs, and forfeiture of property. (*See id.* at 18-19.) He understood that if his sentence was more severe than he expected, he would still be bound by his guilty plea. (*See id.* at 19.) Movant pled guilty, and the Court found that his guilty plea was knowing and voluntary. (*See id.* at 19-21; docs. 287, 301.)

On August 2, 2018, the United States Probation Office (USPO) prepared a PSR in which it applied the 2016 United States Sentencing Guidelines Manual. (*See* doc. 367-1 at ¶ 37.) After

3

applying U.S.S.G. § 2S1.1, the applicable guideline for 18 U.S.C. §§ 1956(a)(2)(B)(i), (ii), and (h) violations, the PSR calculated the base offense level by determining the offense level for the underlying offense under U.S.S.G. § 2D1.1. (*See id.* at ¶ 38.) Because Movant was accountable for 26.53 kilograms of "ice," his base offense level started at 38; two levels were added because the methamphetamine was imported from Mexico, resulting in a base offense level of 40.  (*See id.*) Two levels were also added because Movant was convicted under 18 U.S.C. § 1956.  (*See id.* at ¶¶ 39, 43.)  Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 39.  (*See id.* at ¶¶ 45-47.)  Based on a total offense level of 39 and a criminal history category of I, the resulting guideline imprisonment range was 262 to 327 months.  (*See id.* at ¶ 91.)  Because 240 months' imprisonment was the statutory maximum for the offense, it became the guideline sentence.  (*See id.*)

On August 27, 2018, Movant objected to the PSR, arguing that: (1) he qualified for a two-level reduction under the safety-valve provision of U.S.S.G. § 2D1.1(b)(17); (2) he qualified for a two-level mitigating role reduction because he was a minor participant under U.S.S.G. § 3B1.2(b) based on the consideration of the factors set out in Amendment 794 to the sentencing guidelines; (3) he qualified for a four-level reduction under U.S.S.G. § 2D1.1(a)(5) because of the mitigating role adjustment to which he was entitled under § 3B1.2(b); and (4) the two-level importation enhancement under U.S.S.G. § 2D1.1(b)(5) was inapplicable due to his mitigating role in the offense.  (*See* doc. 390.)  The Government filed a response to Movant's objections on October 18, 2018.  (*See* doc. 451.)

The USPO submitted an addendum to the PSR on September 13, 2018, in which it addressed Movant's objections.  (*See* doc. 415-1.)  It agreed that Movant would be entitled to a two-level reduction under the safety-valve provision under § 2D1.1(b)(17) if he debriefed with the

4

Government, but because he had not done so as of the date of the addendum, the USPO supported the PSR as written and determined that Movant was not entitled to the reduction. (*See id.* at 1.) The addendum noted that if Movant completed his debriefing prior to sentencing, his offense level would be reduced by two levels, resulting in a total offense level of 37; with an offense level of 37 and a criminal history category of I, his guideline imprisonment range would be 210 to 240 months. (*See id.*) Based on his involvement in the conspiracy, the addendum stated that Movant was considered be an average participant within the conspiracy, so he did not qualify for a mitigating role reduction under § 3B1.2(b). (*See id.* at 1-2.) Because Movant did not qualify for a mitigating role reduction, the addendum determined that he also did not qualify for a four-level reduction under § 2D1.1(a)(5), or for the removal of the importation enhancement under § 2D1.1(b)(5). (*See id.* at 2-3.) The addendum also included supplemental information about Movant's physical condition that did not impact the guideline calculations. (*See id.* at 3.)

On December 6, 2018, the USPO submitted a second addendum to the PSR that included corrections based on additional information it had received. (*See* doc. 495-1.) The addendum noted that the 2018 United States Sentencing Guidelines Manual applied to the calculations, and that Movant had satisfied the criteria of 18 U.S.C. § 3553(f)(1)-(5).[4] (*See id.* at 1.) Because he satisfied the criteria of § 3553(f)(1)-(5), he qualified for a two-level reduction under the safety-valve provision of § 2D1.1(b)(17), resulting in a new total offense level of 37. (*See id.* at ¶¶ 38-39, 45-47.) Based on his new offense level 37 and a criminal history category of I, the resulting guideline imprisonment range was 210 to 262 months. (*See id.* at ¶ 91.) Because 240 months' imprisonment was the statutory maximum for the offense, the guideline imprisonment range became 210 to 240 months. (*See id.*) On December 12, 2018, the Government moved for a one-

---

[4] Although the second addendum applied the 2018 United States Guidelines Manual, it identified the applicable guidelines as they were numbered in the 2016 United States Guidelines Manual and the original PSR.

level downward departure under U.S.S.G. § 5K1.1. (*See* doc. 496.)

At the sentencing hearing on December 13, 2018, the Court heard arguments on Movant's objection that he qualified for two-level reduction under § 3B1.2 because he was a minor participant in the charged conspiracy based on consideration of the applicable factors of Amendment 794 to the sentencing guidelines. (*See* doc. 647 at 5-10.) The Court overruled the objection. (*See id.* at 10-11.) Because his remaining objections were contingent on the first objection, defense counsel stated that he had no further objections, and the Court denied the remaining objections. (*See id.* at 11.) The Government's motion for a one-level downward departure was granted, resulting in a guideline imprisonment range of 188 to 235 months, and the findings and conclusions of the PSR and addenda were adopted by the Court. (*See id.* at 11-12.) Movant was sentenced to 188 months' imprisonment on Count Two, to be followed by two years of supervised release, and judgment was entered on December 14, 2018. (*See id.* at 14-15; doc. 498 at 1-3.) At the conclusion of the hearing, the Court specifically directed counsel to find out if Movant wanted to appeal, and it instructed Movant to tell counsel if he wanted to appeal before the two-week period for filing an appeal expired; it also directed counsel to file the notice of appeal for Movant if he wanted to appeal. (*See id.* at 16.) Movant was instructed to self-surrender by January 9, 2019, to begin serving his sentence. (*See id.* at 17.) No appeal was filed.

**B.    <u>Substantive Claims</u>**

Movant's initial § 2255 motion was received on September 3, 2019, and his amended § 2255 motion was received on October 7, 2019. (*See* No. 3:19-CV-2092-B-BH, docs. 2, 4.) His second amended § 2255 motion, received on November 18, 2019, asserts seven grounds for relief:

(1) Prosecutorial Misconduct;

(2) Ineffective Assistance of Counsel . . . [because] counsel failed to file an appeal when requested by Movant;

(3) Ineffective Assistance of Counsel . . . [because] counsel failed to research the facts of the case;

(4) Ineffective Assistance of Counsel . . . [because] counsel failed to request a *Frye* hearing;

(5) Ineffective Assistance of Counsel:  . . . Failure to file a motion to request a 3-Level reduction for Acceptance of Responsibility and Providing Assistance to the Government [ ];

(6) Ineffective Assistance of Counsel: . . . Failure to secure a plea offer of Aiding & Abetting (Lesser included Offense); and

(7) Abuse of Discretion.

(*Id.*, doc. 9 at 6-8.)  The Government filed a response on January 7, 2020.  (*See id.*, doc. 13.)

Movant filed a reply on March 10, 2020.  (*See id.*, doc. 17.)

## C.    **Evidentiary Hearing**

An evidentiary hearing was held on July 28, 2022, regarding Movant's second ground that counsel was ineffective for failing to file a timely notice of appeal.  Movant and his former counsel both testified.

Counsel testified that before Movant pled guilty, they discussed Movant's right to appeal and thoroughly and exhaustively discussed the terms of the plea agreement.  After Movant was sentenced, counsel recalled two meetings and discussions with Movant about an appeal.  The first discussion occurred in a hallway outside the courtroom right after the sentencing hearing at the Court's instruction to find out whether Movant wanted to appeal. Counsel understood the instruction to be as a directive and would not have ignored a directive from the Court.  Counsel and Movant met in the hallway for no more than 15 minutes, during which time they discussed Movant's right to appeal.  Counsel asked him if, as the Judge mentioned, he wanted to appeal and if he wanted to file a notice of appeal, and Movant said no.  At this meeting, they also likely

discussed the sentence imposed and next steps, such as how and where he would self-surrender. The second discussion occurred at counsel's office at some point after the sentencing hearing on December 13, 2018, but before Movant self-surrendered in January 2019. Counsel thought the meeting happened before Christmas, but he had since converted to a different calendaring system, so he did not know the exact date. Counsel also thought Movant was by himself at the second meeting, and he was not sure how long the meeting lasted, but his meetings were typically 30 minutes or less. During the second meeting, they had a comprehensive conversation about the case, what happened at sentencing, and the next steps. Counsel also again asked Movant whether he wanted to appeal or file a notice of appeal, and Movant told him no. Counsel had filed notices of appeal in many cases and would have absolutely filed a notice of appeal if he was requested to do so by Movant. He would have filed the notice of appeal prior to withdrawing from the case so that the Court could appoint appellate counsel, as mentioned at the sentencing hearing.

According to Movant, he had two meetings with counsel relating to an appeal. At the first meeting, which occurred prior to Movant's interview with the USPO for his PSR, he asked counsel what they could do on appeal if something happened, and counsel told him that he could get a higher sentence if he appealed. The second meeting occurred right after the sentencing hearing and lasted about 10-12 minutes; he did not have an interpreter during the meeting, although he did have one at the sentencing hearing. During the second meeting, Movant asked counsel what had happened with his sentence because he understood that his sentence was going to be lower. Counsel told him that was it, and that he did everything he could do. Movant then asked counsel "if there was something we can do," and counsel told him that was it. The meeting was then interrupted by the prosecutor, who asked counsel whether he was going to the same place where she was going to be at a certain time. The prosecutor left, and Movant's conversation with counsel

was over.  Movant did not specifically request for counsel to file an appeal or tell him to file a notice of appeal, but when Movant asked counsel "if there was something we can do," he was wondering if they could appeal, and he intended counsel to understand that he was requesting an appeal by this statement.  Because counsel was an attorney, he should have known what to do.  In Movant's mind, he requested an appeal during this discussion.

Regarding counsel's testimony that he met with Movant at his office sometime after sentencing, but before Movant's self-surrender, the testimony did not sound right to Movant. Movant went to counsel's office to make payments before sentencing, but he did not go after sentencing, and he never went to counsel's office alone.  He always went with his wife.  Movant was told by an USPO officer over the phone that he had to self-surrender in Lexington, Kentucky. In response, Movant told the USPO officer that he did not have transportation to Kentucky; the USPO officer called Movant back and told him he could self-surrender in Seagoville, Texas.

## II.    SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well-established that "a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the

error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III.    PROSECUTORIAL MISCONDUCT

In his first ground, Movant alleges prosecutorial misconduct. (*See* No. 3:19-CV-2092-B-BH, doc. 9 at 6; doc. 10 at 4-7.) He contends that "in order for the movant to plead to money laundering, the Government had to show only that [sic] a single instance of a specified unlawful activity." (*Id.*, doc. 9 at 6.) He argues that the "Government failed to prove an essential element of the crime," and that his guilty plea "was improper because the only permissable [sic] inference was the proceeds of an unlawful activity." (*Id.*; *see also id.*, doc. 10 at 4.) The Government contends that this claim is procedurally barred from review because Movant failed to raise it on direct appeal. (*See id.*, doc. 13 at 9-13.)

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly,* 959 F.2d 1307, 1316 (5th Cir. 1992). Actions and statements of a prosecutor may violate due process in two ways: "[t]hey may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh,* 848 F.2d 606, 608 (5th Cir. 1988)). Federal courts apply "a two-step analysis to charges of prosecutorial misconduct." *United States v. Duffaut,* 314 F.3d 203, 210 (5th Cir. 2002). The court first decides whether the prosecutor's actions were improper and, if so, it then determines whether the actions "prejudiced the defendant's substantive rights." *Id.*

When a movant asserts a generic due process violation, and it is determined that the prosecutor's actions were improper, the court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly* 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).

According to Movant, "the Government failed to prove an essential element of the crime— [ ] that Movant was involved in a financial transaction involving the proceeds [ ]." (No. 3:19-CV-2092-B-BH, doc. 10 at 4.) He also claims that "the Government failed to show specific facts that he was part of a conspiracy to commit money laundering." (*Id.*) He alleges that "[m]erely being in possession of un-declared proceeds is nof [sic] sufficient to support a money laundering conviction," and he appears to argue that the Government failed to show "a design to conceal or disguise the source or nature of the proceeds," which is required for a conviction of money laundering. (*Id.*, doc. 10 at 5-6.) He also alleges that "he did not knowingly commit the elements that create the requisite criminal intent." (*Id.*, doc. 10 at 4.)

Even assuming for purposes of this motion only that the claim is not procedurally barred from review, it is refuted by the record. The record shows that Movant was indicted for conspiracy to commit money laundering under § 1956(h) based on acts violating §§ 1956(a)(2)(B)(i), (ii). (*See* doc. 84 at 4-5.) Section 1956(a)(2)(B) provides:

(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or

11

through a place outside the United States or to a place in the United States from or through a place outside the United States—

. . .

> (B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part—
>
>> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
>>
>> (ii) to avoid a transaction reporting requirement under State or Federal law,
>
> shall be sentenced to a fine . . . or imprisonment for not more than twenty years, or both. For the purpose of the offense described in subparagraph (B), the defendant's knowledge may be established by proof that a law enforcement officer represented the matter specified in subparagraph (B) as true, and the defendant's subsequent statements or actions indicate that the defendant believed such representations to be true.

18 U.S.C. § 1956(a)(2)(B). Section 1956(a)(2)(B) does not involve or include "a financial transaction" as an element of the offense.[5] *See id.* Accordingly, to the extent Movant argues that the Government acted improperly because it failed to show that he "was involved in a financial transaction involving the proceeds," his arguments are without merit. (No. 3:19-CV-2092-B-BH, doc. 10 at 4.)

The record also shows that Movant admitted in his factual resume that he "knowingly combined, conspired, confederated and agreed" with others to commit offenses in violation of §§ 1956(a)(2)(B)(i), (ii). (doc. 195 at 2-3.) He specifically admitted that "he collected drug proceeds for the drug trafficking organization," that he met with a co-defendant who delivered $172,460 in drug proceeds to Movant in a parking lot on April 16, 2017, that the drug proceeds were sent to

---

[5] Section 1956(a)(1) penalizes "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity," under specific circumstances. 18 U.S.C. § 1956(a)(1). Movant's offense of conviction under § 1965(h) did not allege or rely on any violation of § 1956(a)(1), however. (*See* doc. 84 at 4-5.)

Mexico, and that he often used a cellular phone to discuss and facilitate these transactions. (*Id.* at 3.) At his re-arraignment, he swore under oath that all of the facts stated in his factual resume were true and correct, and he agreed in both his factual resume and at his re-arraignment that he committed each of the essential elements of the offense of conviction. (*See* doc. 814 at 20; *see also id.* at 12-14; doc 195 at 3.) Additionally, based on information obtained from an independent investigation by the USPO, review of the criminal filings and DEA investigative materials, and interviews with DEA officers, the PSR noted that Movant was identified as a money courier who received money from co-conspirators and provided drug proceeds to couriers from Mexico who subsequently returned there. (*See* doc. 367-1 at ¶¶ 10, 20.) Investigators intercepted calls between co-conspirators and Movant in which they discussed the delivery of $172,460 in drug proceeds. (*See id.* at ¶ 25.) Movant also participated in a post-arrest interview during which investigators informed him that they knew from wiretaps that he received $170,000, and they showed him a picture of him meeting with a co-conspirator. (*See id.* at ¶ 28.) In response, Movant stated that he was given $100,000 at the meeting shown in the picture, that he met with a co-conspirator approximately once a month and typically received $10,000 to $20,000, which he then sent to another individual, and that he was paid for the transactions. (*See id.*)

Movant's conclusory and unsubstantiated allegations that the Government "failed to show specific facts that he was part of a conspiracy to commit money laundering" are refuted by the stipulations in his factual resume, his own admissions under oath, and the information contained in the PSR.[6] (No. 3:19-CV-2092-B-BH, doc. 10 at 4.) Accordingly, his prosecutorial misconduct

---

[6] To support his allegation that the Government failed to show he committed an essential element of the charged offense, Movant cites the Government's statement at the sentencing hearing that it had "no evidence that [Movant] actually planned or organized the criminal activity." (doc. 647 at 8; *see also* No. 3:19-CV-2092-B-BH, doc. 10 at 6.) Movant takes the statement out of context, however. The Government's statement was made in the context of the factors considered in determining whether Movant was a minimal or minor participant in the offense for sentencing purposes under U.S.S.G. § 3B1.2, one of which was "the degree in which the defendant participated in the planning or organizing of the criminal activity." (doc. 647 at 8); *see also* U.S.S.G. § 3B1.2, cmt. 3(C)(ii). Neither planning

claim is without merit, and he has failed to demonstrate that he is entitled to § 2255 relief.[7]  *See*

*Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot

consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition [ ],

unsupported and unsupportable by anything else contained in the record, to be of probative

evidentiary value."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("'[M]ere conclusory

allegations on a critical issue are insufficient to raise a constitutional issue.'").  His claim should

be denied.

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

In his second through sixth grounds, Movant contends that trial counsel rendered

ineffective assistance.  (*See* No. 3:19-CV-2092-B-BH, doc. 9 at 6-8.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that

"[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of

Counsel for his defense." U.S. CONST. amend. VI.  It guarantees a criminal defendant the effective

assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668, 686

(1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective

assistance of counsel, the movant must demonstrate that counsel's performance was deficient and

that the deficient performance prejudiced his defense.  *Strickland*, 466 U.S. at 687. A failure to

establish either prong of the *Strickland* test requires a finding that counsel's performance was

---

nor organizing the charged criminal activity is an essential element of Movant's offense of conviction.  *See* 18 U.S.C. §§ 1956(a)(2)(B), (h).  Movant's reliance on the Government's statement at sentencing to support his claim is misplaced and his argument is without merit.

[7] For the first time in his reply, Movant claims that the Government "used statements [Movant] made to Law Enforcement, which violated the *Massiah* standard since [Movant] was not represented by Counsel."  (No. 3:19-CV-2092-B-BH, doc. 17 at 6.)  Movant does not provide any facts, evidence, or argument to support this allegation.  He is not entitled to § 2255 relief based on this conclusory allegation.

constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

## A.    <u>Failure to File Notice of Appeal</u>

In his second ground, Movant contends that counsel was ineffective because he "failed to file an appeal when requested by Movant." (No. 3:19-CV-2092-B-BH, doc. 9 at 6.) He alleges that he wanted to appeal his sentence and "specifically requested" counsel to file an appeal; counsel "responded to Movant by stating: 'If you file an appeal, you can lose and the Court can sentence you to more time.'" (*Id.*, doc. 10 at 7; *see also id.*, doc. 9 at 6; doc. 17 at 5-6.)

At the evidentiary hearing, Movant testified that during a meeting with counsel before being interviewed by the USPO for his PSR, counsel told him that if he filed an appeal, he could get a higher sentence. He also conceded that he never specifically asked counsel to file a notice

of appeal. He instead testified that when he asked counsel "if there was anything we can do" following the sentencing hearing, he was wondering if they could appeal. He intended counsel to understand that he was requesting an appeal because counsel was an attorney, and he should have known what to do. The transcript of the sentencing hearing reflects that at the conclusion of the hearing, the Court told counsel to discuss with Movant whether he wanted to file an appeal. Counsel testified that he followed the Court's directive and met with Movant immediately after the sentencing hearing to discuss his right to appeal and to find out whether he wanted to appeal. He asked Movant in a hallway outside the courtroom whether he wanted to file an appeal or notice of appeal, and Movant responded no. Counsel also testified that he met with Movant a second time at his office sometime after the sentencing hearing and before Movant's self-surrender, at which meeting he again asked Movant if he wanted to appeal or file a notice of appeal. Movant again responded no.

There is no constitutional right to appeal a criminal sentence." *United States v. Burns*, 433 F.3d 442, 445 (5th Cir. 2005) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Counsel "is not burdened by any general duty to perfect an appeal of every criminal conviction." *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999). Counsel's failure to pursue an appeal can amount to ineffective assistance under *Strickland*, however. *See United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000)).

The assessment of deficient performance "begins with the question whether counsel 'consulted' with the defendant regarding an appeal." *Pham*, 722 F.3d at 323 (citation omitted). "'Consulting' is a term of art that means 'advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.'" *Id.* (citation omitted). There is no constitutional requirement that counsel consult with

16

the defendant about an appeal in every case. *Flores-Ortega*, 528 U.S. at 479-80. A constitutionally imposed duty arises when there is reason to think that a rational defendant would want to appeal, such as when there are nonfrivolous grounds for appeal, or when the defendant has reasonably demonstrated to counsel that he is interested in appealing. *Id.* at 480.

A movant can satisfy the prejudice prong by demonstrating that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. "[C]ourts must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct'[.]" *Id.* at 477 (citation omitted). "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Pham*, 722 F.3d at 323-24 (citation and internal quotation marks omitted); *see also Garza v. Idaho*, 139 S. Ct. 738, 746 (2019) ("Where . . . a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions."); *Flores-Ortega*, 528 U.S. at 477. If a movant proves, by a preponderance of the evidence, that he directed his counsel to file an appeal and it was not filed, prejudice is presumed regardless of the merits and regardless of any appeal waiver. *See United States v. Tapp*, 491 F.3d 263, 265-66 (5th Cir. 2007). When a movant is denied the opportunity to appeal due to ineffective assistance of counsel, the movant is entitled to an out-of-time appeal. *See id.* at 266; *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001).

Here, on July 23, 2019, over seven months after sentencing, Movant submitted a *pro se* request for copies of the indictment, sentencing memorandum, and docket sheet from the underlying criminal case. (*See* doc. 699.) His request did not say anything about an appeal. It was not until his first amended § 2255 motion was received on October 7, 2019, nearly ten months

17

after sentencing, that Movant first claimed that counsel had failed to file a notice of appeal as requested. (*See* doc. 4 at 6.)

At the conclusion of the sentencing hearing, during which Movant had an interpreter, the Court informed Movant about his right to appeal and expressly stated: "Be sure to tell [counsel], Mr. Guerrero, if you want to appeal before the two weeks is up." (doc. 647 at 16.) Movant's admission at the evidentiary hearing that he never specifically asked counsel to file a notice of appeal after the sentencing hearing is consistent with the Court's directive to tell counsel whether he wanted to appeal, as well as with counsel's testimony that Movant told him he did not want to appeal. Movant's testimony that he was thinking about an appeal when he asked counsel "if there was anything we can do" and intended counsel to understand that he was requesting an appeal is inconsistent with the Court's specific directive for him to "tell [counsel] . . . if you want to appeal" and therefore not credible. (*Id.*) Additionally, it is not credible that counsel would have ignored an express directive by the Court to find out whether Movant wanted to appeal and to file the appropriate notice if he did want to appeal. It also is not credible that counsel would have told Movant before he had been interviewed for a PSR, and months before he was even sentenced, that he would get a higher sentence if he appealed his conviction and lost. Movant's testimony that a meeting with counsel between the sentencing hearing and the self-surrender date did not happen based only on the fact that he never went to counsel's office alone is likewise not credible. Counsel acknowledged that he met with Movant and his wife multiple times, although he believed that Movant was alone at that meeting.

Based on the demeanor of the witnesses at the hearing, their respective roles, any apparent bias, inconsistencies in testimony, explanations for inconsistencies, and corroborating evidence, the Court finds more credible the testimony of counsel that he talked with Movant about an appeal

immediately after the sentencing hearing, as expressly directed by the Court, and that Movant told him then that he did not want to appeal, and that Movant gave him the same answer at a later meeting before the self-surrender date. Movant has not proven by a preponderance of the evidence that he told counsel to appeal his criminal conviction or sentence.

Further, given the circumstances of this case, counsel had no reason to think Movant wanted to appeal. He entered a guilty plea on Count Two of the superseding indictment, admitted the facts supporting his guilt, and avoided a felony conviction for conspiracy to distribute a controlled substance, for which he had also been charged in the superseding indictment and which carried a mandatory minimum and a statutory maximum term of imprisonment of life. (*See* doc. 84 at 1-2); 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. He also received the lowest possible sentence within the applicable guidelines range. (*See* doc. 498 at 2; doc. 647 at 14.) Because Movant did not tell counsel to file an appeal despite the Court's instruction at the conclusion of the sentencing hearing, and considering Movant's appellate-rights waiver, the charge on which he was convicted in comparison to the charges on which he was indicted, and his sentence at the lowest end of the applicable guideline range, counsel had no reason to think that a rational defendant would want to appeal. *See Flores-Ortega*, 528 U.S. at 480. Movant has failed to show that he received ineffective assistance of counsel regarding filing an appeal, and his claim should be denied.[8]

---

[8] For the first time at the evidentiary hearing on July 28, 2022, Movant appeared to claim that counsel failed to consult with him about an appeal. To the extent Movant seeks to amend his § 2255 pleadings to add this new claim, because it was raised for the first time over one year after his conviction became final under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104–132, 110 Stat. 1214, the claim is time-barred. Rule 15 of the Federal Rules of Civil Procedure provides for the relation back of amendments filed after the expiration of the limitations period to the date of the original pleading when the claim asserted in the proposed amended pleading arises out of the same conduct, transaction, or occurrence, however. *See* Fed. R. Civ. P. 15(c)(1); *United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002) (recognizing that Rule 15 applies in § 2255 proceedings). Here, Movant's claim that counsel failed to file a notice of appeal is based on his allegations that he specifically told counsel he wanted to appeal, and counsel failed to file a notice of appeal. He has failed to allege or show that his new failure-to-consult claim arises out of the same operative facts as his timely claim failure-to-file claim. *See United States v. Alaniz*, 5 F.4th 632, 637-38 (5th Cir. 2021) ("[T]he original filings must lay out factual allegations—not just cite cases with legal concepts—that support both the original and the newly-asserted claims."). Accordingly, to the extent considered, this new claim should be denied.

B.    **Failure to Investigate**

In his third ground, Movant contends that counsel was ineffective because he "failed to research the facts of the case." (No. 3:19-CV-2092-B-BH, doc. 9 at 6; *see also id.*, doc. 10 at 9.)

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial," however. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (stating, in context of direct appeal, that "[t]o establish his failure to investigate claim, [the defendant] must allege with specificity what the investigation would have revealed and how it would have benefitted him."). "[T]here is no presumption of prejudice based on the failure to investigate." *Gonzalez v. United States*, Nos. 5:19-CV-145, 5:15-CR-1112-01, 2020 WL 1893552, at *3 (S.D. Tex. Jan. 24, 2020) (citing *Woodard v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990)).

Movant claims that "his only function in the case at bar, was a money courier[,]" and "counsel did not investigate the alleged money laundering guilty plea because transportation of the money does not qualify because is [sic] does not amount to a financial transaction" within the meaning of § 1956. (No. 3:19-CV-2092-B-BH, doc. 9 at 6; doc. 10 at 9.) He claims that had counsel "investigated the facts of the underlying charge, Movant would not have agreed to plead guilty," and that "there was a reasonable probability that Movant would not hae [sic] pled guilty to charges he was innocent and insisted on going to trial." (*Id.*, doc. 10 at 10.) He claims that "under the promotion prong, [counsel] failed to investigate if Movant conspired to conduct a financial transaction, which involved the proceeds of unlawful activity, with knowledge that the

money was the proceeds of an unlawful activity, and Movant had the intent to promote the underlying criminal activity," and that counsel "failed to investigate whether Movant, under the concealment prong conducted a financial transaction with criminal proceeds, with the knowledge that the money was the proceeds of an unlawful activity, and with knowledge that the transaction was designed, in whole or part, to conceal or disguise the nature, location, source, ownership, or control of the money." (*Id.*, doc. 10 at 9-10.)

Movant has not shown that further investigation would have benefitted his case, and he has not identified what exculpatory evidence such investigation would have yielded. As discussed, Movant's charged offense was based on violations of § 1956(a)(2)(B), the essential elements of which do not involve a financial transaction. (*See* doc. 84 at 4-5); 18 U.S.C. § 1956(a)(2)(B). Additionally, he pled guilty to the conspiracy charge and specifically admitted that he "collected drug proceeds for the drug trafficking organization," and that he met with a co-defendant who delivered $172,460 in drug proceeds to Movant in a parking lot, which drug proceeds were then sent to Mexico. (doc. 195 at 3.) He admitted at the re-arraignment that he was guilty of the essential elements of the offense, and he conceded in his plea agreement that he was pleading guilty because he was guilty. (*See* doc. 193 at 6; doc. 814 at 12-14.) Accordingly, Movant has failed to show that counsel's performance was deficient based on an alleged failure to investigate.

Regarding prejudice in the context of a guilty plea, as here, "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill v Lockhart*, 474 U.S. 52, 59 (1985). Here, Movant admitted his guilt to the essential elements of the charged offense and stipulated to specific facts to support

his guilty plea, and aside from conclusory allegations that are insufficient to support a claim of ineffective assistance of counsel, he has not shown that further investigation by counsel would have unearthed evidence that would have caused him to plead not guilty and proceed to trial, or would have led counsel to change his recommendation as to the guilty plea. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").  Accordingly, Movant also has failed to show *Strickland* prejudice.

Because Movant has failed to satisfy both *Strickland* prongs, he is not entitled to § 2255 relief on his claim regarding counsel's alleged failure to investigate, and it should be denied.

## C.    <u>Failure to Request *Frye* Hearing</u>

In his fourth ground, Movant contends that counsel was ineffective because he "failed to request a *Frye* hearing."  (No. 3:19-CV-2092-B-BH, doc. 9 at 8.)  He argues that "counsel failed to offer a *Frye* hearing with regards to the Government" [sic] plea offer" and that "counsel was equally deficient by advising Movant to accept the guilty plea even though no hearing preceded the offer and Movant did not understand fully the context of the guilty plea."  (*Id.*)

Aside from these general allegations, Movant does not develop or otherwise address this argument in his memorandum in support or in his reply.  To the extent Movant's claim is referring to *Missouri v. Frye*, 566 U.S. 134 (2012), that case involved a claim of ineffective assistance of counsel where counsel failed to inform the defendant of a plea offer, and after the plea offer's expiration, the defendant pleaded guilty under a less favorable plea agreement.  *See Frye*, 566 U.S. at 138-39; *see also Lafler v. Cooper*, 566 U.S. 156, 160 (2012).   To "help ensure against late, frivolous, or fabricated claims [of ineffective assistance of counsel] after a later, less advantageous plea offer has been accepted," *Frye* authorized district courts and the prosecution to make formal

plea offers "part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence." *Frye*, 566 U.S. at 146; *see also United States v. Draper*, 882 F.3d 210, 218 (5th Cir. 2018) ("[*Frye* authorizes district courts to 'ma[ke] [formal offers] part of the record' so as to 'ensure against' IAC claims based on counsel's failure to deliver an offer.").

Here, Movant does not contend that counsel rendered ineffective assistance that caused him not to accept a more beneficial plea offer, and the record does not show the existence of any such plea offer. Because Movant offers no facts or evidence to show that the holding in *Frye* is applicable to his case, he has not shown that any hearing under *Frye* was available or warranted. He therefore has failed to show deficient performance by counsel. He also has failed demonstrate resulting prejudice under *Strickland*. Accordingly, he is not entitled to § 2255 relief on this claim, and it should be denied.

## D.    Failure to Move for Reduction Based on Acceptance of Responsibility

In his fifth ground, Movant contends that counsel was ineffective because he failed "to file a motion to request a 3-Level reduction for Acceptance of Responsibility and Providing Assistance to the Government." (No. 3:19-CV-2092-B-BH, doc. 9 at 7; *see also id.*, doc. 10 at 11-13.) He argues that because he "timely notified the Government of his intention to plead guilty and because Movant demonstrated Acceptance of Responsibility, Moant [sic] asserts his base Offense Level should have been reduced by 3-Levels [sic]" under U.S.S.G. § 3E1.1. (*Id.*, doc. 10 at 11.) He claims that counsel "overlooked the need to consult with the Government prosecutor for a 3-Level reduction pursuant to U.S.S.G. 3E.1.1 [sic]." (*Id.*, doc. 10 at 13.) He claims that "there is a reasonable probability that, but for Counsel's unprofessional errors; [sic] the results of the proceedings would have been different." (*Id.*)

Here, the record shows that the PSR and its second addendum deducted three levels from Movant's offense level for acceptance of responsibility under §§ 3E1.1(a), (b).  (*See* doc. 367-1 at ¶¶ 45-46; doc.495-1 at ¶¶ 45-46.)  Because Movant received a three-level reduction to his offense level for acceptance of responsibility under § 3E1.1, he has failed to show that counsel was deficient for failing to file a motion seeking a reduction he had already received.  *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").  He also has failed to show prejudice.  Movant's claim that counsel was ineffective for failing to file motion for a three-level reduction based on his acceptance of responsibility is without merit and should be denied.

## E.    Failure to Secure Plea Offer

In his sixth ground, Movant contends that counsel was ineffective because he failed "to secure a plea offer of Aiding & Abetting (Lesser included Offense)[.]"  (No. 3:19-CV-2092-B-BH, doc. 9 at 7; *see also id.*, doc. 10 at 14.)  He argues that counsel "failed to seek or request a lesser included offense," and "never disclosed to Movant the option of a lesser included offense even if it was available or not."  (*See id.*, doc. 10 at 14.)

Here, Movant was charged and convicted of conspiracy to commit money laundering.  (*See* docs. 84, 498.)  He appears to claim that aiding and abetting money laundering is a lesser included offense of the conspiracy charge of which he was convicted, and he argues that counsel should have secured a plea offer for "Aiding and Abetting since Movant participated as a minor party in the case at bar," and should have informed him about the potential for such a plea offer.  (No. 3:19-CV-2092-B-BH, doc. 9 at 7; *see also id.*, doc. 10 at 14.)

"One offense is a lesser included offense of another if 'the elements of the lesser offense are a subset of the elements of' the greater offense."  *United States v. Scott*, 987 F.2d 261, 266 (5th

Cir. 1993).  "For the elements of the lesser offense to be a subset of the charged offense, it must be 'impossible to commit the [charged offense] without first having committed the lesser.'" *United States v. Ambriz*, 727 F.3d 378, 382 (5th Cir. 2013) (quoting *Schmuck v. United States*, 489 U.S. 705, 719 (1989)).  The Fifth Circuit has held that "[c]onspiracy and aiding and abetting are entirely separate crimes[.]"  *United States v. Fesler*, 781 F.2d 384, 390 (5th Cir. 1986); *see also United States v. Payan*, 992 F.2d 1387, 1391 (5th Cir. 1993) ("The legislative history of the federal statutes regarding aiding and abetting and conspiracy indicates that Congress found no duplication or conflict between these and their predicate crimes, but instead intended that each be treated as an independent offense or basis of responsibility.") (footnotes omitted).  Movant has not shown that aiding and abetting the substantive offense of money laundering was a lesser included offense of his conspiracy charge; nor has he alleged the existence of any other alleged lesser included offense for which he could have been charged.  He therefore has failed to show that counsel was deficient for failing to inform him of the potential for, or to seek a plea offer on, any lesser included offense.

Even assuming for purposes of this motion only that counsel rendered deficient performance as alleged, Movant must also show prejudice under *Strickland*.  To demonstrate prejudice in the context of plea negotiations, he must show a reasonable probability that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163.  When, as here, a movant claims that "ineffective assistance led to the improvident acceptance of a guilty plea," he must show that, but for counsel's deficient performance, there is a reasonable probability that he "'would not have pleaded guilty and would have insisted on going to trial.'"  *Id.* (quoting *Hill*, 474 U.S. at 59).

Here, Movant has not shown prejudice.  Although he claims that counsel's performance was deficient, he has failed to demonstrate that the Government was willing to negotiate on the

25

charged offense.  Nor has he demonstrated a reasonable probability that he would not have pleaded guilty and would have chosen to proceed to trial but for counsel's alleged deficiency.  His conclusory statement that counsel's "unprofessional errors seriously affected Movant's right to effective assistance of Counsel," is insufficient to establish prejudice.  (No. 3:19-CV-2092-B-BH, doc. 10 at 14); *see also Miller*, 200 F.3d at 282.  Movant has not shown that he is entitled to § 2255 relief on this claim, and it should be denied.[9]

## V.    ABUSE OF DISCRETION

In his seventh ground, Movant contends that the Court "abused its discretion by denying Movant's motion for reduction under U.S.S.G. § 3B1.2(b), U.S.S.G. § 2D1.1(a)(5), § 2D1.1(b)(5), and 2D1.1(b)(17)."  (No. 3:19-CV-2092-B-BH, doc. 9 at 7.)  He argues that he was a "minor participant in the case at bar," and "was not the leader of any organization."  (*Id.*)  The Government argues that this claim is waived under the terms of Movant's plea agreement, procedurally barred from review, and not legally cognizable in this habeas proceeding.  (*See id.*, doc. 13 at 14-15.)

Even assuming for purposes of this motion only that Movant's claim is not procedurally barred or waived under the terms of his plea agreement, it is well established that the technical

---

[9] In connection with this claim, Movant also alleges that counsel "failed to properly advise Movant of the maximum sentence that he could receive and what alternative charges he could pursue," and "[c]ounsel greatly underestimated Movant's sentencing exposure." (No. 3:19-CV-2092-B-BH, doc. 10 at 14.) Even assuming for purposes of this motion only that counsel rendered deficient performance as alleged by Movant, he has failed to show prejudice under *Strickland*.  The record shows that Movant was advised both through the plea agreement and by the Court in person that by pleading guilty, he was subjecting himself to a statutory maximum term of imprisonment of 20 years. (*See* doc. 193 at 2; doc. 814 at 18.)  He was also advised through the plea documents and at his re-arraignment that his sentence would be imposed after the Court's consideration of the sentencing guidelines, which were advisory and not mandatory.  (*See* doc. 193 at 3; doc. 814 at 9.)  He swore in open court that he generally understood the Court's description of the sentencing process, that no promise or assurance had been made to him about what his sentence would be, that he understood he should not depend or rely on any statement or promise, including from his counsel, about his exact sentence, and that he understood only the Court could determine his sentence. (*See* doc. 814 at 9-11.)  Accordingly, regardless of what his counsel told him about his sentence exposure, he cannot show prejudice because his plea documents and responses under oath to the Court's questioning show that he was clearly informed about and understood his sentence exposure when he pled guilty under the plea agreement.  Movant is therefore not entitled to § 2255 relief on this basis, and the claim should be denied.

application of the sentencing guidelines is not subject to collateral review in a § 2255 motion. *See, e.g., United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999); *United States v. Payne*, 99 F.3d 1273, 1281-82 (5th Cir. 1996). "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." *Williamson*, 183 F.3d at 462. Accordingly, Movant's claim regarding the trial court's alleged error in failing to apply role reductions under the sentencing guidelines is not cognizable under § 2255 and entitles him to no relief.[10] The claim should be denied.

## VI.    INVOLUNTARINESS OF PLEA

Movant's arguments concerning his grounds for relief include allegations that his "guilty plea was made under duress and was involuntary and unknowing [sic] entered," and that counsel "through coercion induced me to accepting [sic] a plea without fully explaining the ramifications of the plea, which I didn't fully understand." (No. 3:19-CV-2092-B-BH, doc. 10 at 7, 9; *see also* doc. 9 at 6; doc 17 at 4.) These allegations are addressed to the extent they may be liberally construed as challenging the voluntariness of his guilty plea.

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with

---

[10] To the extent Movant contends that "he met the criteria set forth in § 5C2.1(a)(1-5)" and that "the District [sic] ignored his contribution to the Government's case; therefore his offense level should have been decreased [sic] by two (2) levels," the record shows that he received a 2-level reduction to his offense level after satisfying the criteria of 18 U.S.C. § 3553(f)(1)-(5), as set forth in U.S.S.G. § 5C1.2(a)(1)-(5). (No. 3:19-CV-2092-B-BH, doc. 10 at 15; *see also* doc. 495-1 at ¶ 38.) Accordingly, even if these allegations were cognizable in this habeas action, they are refuted by the record and without merit.

sufficient awareness of the relevant circumstances and likely consequences.'"  *Ruiz*, 536 U.S. at

629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*,

523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is

'voluntary' and 'intelligent.'") (quoting *Brady*, 397 U.S. at 748).  A plea qualifies as intelligent

when the criminal defendant enters it after receiving "real notice of the true nature of the charge

against him, the first and most universally recognized requirement of due process."  *Bousley*, 523

U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (internal quotation marks

omitted).  In determining whether a plea is intelligent, "the critical issue is whether the defendant

understood the nature and substance of the charges against him, and not necessarily whether he

understood their technical legal effect."  *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there

needs to be an affirmative showing that the decision to plead guilty was voluntarily and

intelligently made."  *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000).  "Rule 11 of the

Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea

of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as

well as his rights as a criminal defendant."  *United States v. Vonn*, 535 U.S. 55, 62 (2002).  "The

very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may

not adequately understand the rights set forth in the Rule unless the judge explains them."  *Id.* at

78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences

of his guilty plea does not require a trial court to determine that the defendant has a perfect

understanding of the consequences, however.  The court must only ascertain whether the defendant

has a realistic or reasonable understanding of his plea.  *See United States v. Gracia*, 983 F.2d 625,

627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic

understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Rule 11 "provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty pleas "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

Here, Movant's allegations that he pled guilty under duress, was coerced by counsel into pleading guilty, and was unaware of the consequences of pleading guilty are contradicted by the record. He stipulated in his factual resume that he "collected drug proceeds for the drug trafficking organization," that he met with a co-defendant who gave him $172,460 in drug proceeds that were then sent to Mexico, and that he knowingly committed all of the essential elements of the offense of conviction. (*See* doc. 195 at 2-3.) In his plea agreement, Movant was advised that he was subjecting himself to a maximum term of 20 years' imprisonment, and he agreed that he understood the nature and elements of the offense to which he was pleading guilty, that the factual resume was true, and that his guilty plea was freely and voluntarily made, and was not the result

29

of force, threats, or promises outside of those in the plea agreement.  (*See* doc. 193 at 1-2, 5.)  At his re-arraignment, he acknowledged that he was subjecting himself to a maximum term of 20 years' imprisonment by pleading guilty, and he was admonished that his guilty plea must not be induced or prompted by any pressure, threats, force, or coercion or any kind, or by any promises outside of the plea agreement.  (*See* doc. 814 at 14, 18-19.)  With this knowledge, Movant swore in open court that no one in any way attempted to force him to plead guilty, and he persisted with his guilty plea.  (*See id.* at 14.)

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court.  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  They must also overcome the presumption of regularity and "great weight" accorded court records.  *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that "official records are entitled to a presumption of regularity").

Movant has failed to overcome the presumption of verity given to his sworn statements in open court, and the great evidentiary weight accorded to court records.  *See Blackledge*, 431 U.S. at 74.  Movant's conclusory assertions are not evidence of duress, coercion, or lack of awareness of the consequences of pleading guilty; to the extent his assertions rely on the merits of his claims of prosecutorial misconduct and ineffective assistance of counsel based on an alleged failure to investigate, Movant has failed to show that he is entitled to relief on those grounds for the reasons discussed.  Accordingly, Movant has not shown that his guilty plea was involuntary or that he was

unaware of the consequences of his guilty plea.   He is not entitled to § 2255 relief on this claim, and it should be denied.

## VII.   CUMULATIVE ERROR

In the memorandum in support of the § 2255 motion and in his reply, Movant contends that the "cumulative errors during the proceedings were highly prejudicial, and deprived Movant of a fair and just proceeding."  (No. 3:19-CV-2092-B-BH, doc. 10 at 17; *see also id.*, doc. 17 at 13.)

The Fifth Circuit has recognized that "'[u]nder the cumulative error doctrine, relief may be obtained only when constitutional errors so fatally infect the trial that they violate the trial's fundamental fairness.'"  *United States v. Fields*, 761 F.3d 443, 483 (5th Cir. 2014) (quoting *United States v. Stephens*, 571 F.3d 401, 412 (5th Cir. 2009)).   Because Movant failed to establish constitutional violations based on any of his grounds for relief, he has not demonstrated any constitutional errors that may be considered cumulatively.  *See, e.g., Tovar v. United States*, No. 3:18-CV-528-B (BT), 2019 WL 7762200, at *7 (N.D. Tex. Dec. 26, 2019) (finding that the movant was not entitled to § 2255 relief on cumulative error claim where he failed to establish ineffective assistance of counsel under *Strickland*), *rec. adopted*, 2020 WL 470270 (N.D. Tex. Jan. 29, 2020). To the extent Movant's § 2255 filings may be liberally construed to assert a separate ground for relief based on alleged cumulative error, the claim entitles him to no relief under § 2255, and it should be denied.

## VIII.   ACTUAL INNOCENCE

In connection with his sixth ground, Movant contends "the evidence was insufficient to support his conviction of conspiracy to commit money laundering.   Accordingly, he further contends that his [sic] is actually innocent of the charge for which he was convicted."  (No. 3:19-

CV-2092-B-BH, doc. 10 at 14; *see also id.*, doc. 9 at 7.)

Both the Supreme Court and the Fifth Circuit have held that a stand-alone claim of actual innocence is not a ground for habeas relief. *See Herrera v. Collins,* 506 U.S. 390, 400-01 (1993); *Dowthitt v. Johnson,* 230 F.3d 733, 741 (5th Cir. 2000). Even if a "truly persuasive" showing of actual innocence would warrant federal habeas relief, the threshold would be "extraordinarily high." *Herrera*, 506 U.S. at 417.

Movant has not met this high burden. A claim of "[a]ctual innocence means 'factual innocence, and not mere legal insufficiency.'" *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Beyond conclusory allegations, Movant does not present any facts or evidence showing that he is factually innocent of the conduct underlying his conviction; to the contrary, he admits in his § 2255 filings that his role was as a "courier," "delivery man," and "delivery person," that he "participated" in the case, and that he engaged in "misconduct" for which he took responsibility. (No. 3:19-CV-2092-B-BH, doc. 9 at 6-7; doc. 10 at 10-11, 13; doc. 17 at 6, 8.) He instead argues that his conduct was legally insufficient to establish conspiracy to commit money laundering. (*See id.*, doc. 10 at 14; doc. 17 at 10.) Because "mere legal insufficiency" is insufficient to establish actual innocence, he has not demonstrated that he is entitled to § 2255 relief, and his claim should be denied. *Jones*, 172 F.3d at 384.

## IX.    RECOMMENDATION

The second *Amended Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on November 18, 2019 (doc. 9), should be **DENIED** with prejudice.

**SIGNED this 1st day of August, 2022.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE